UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN UMBARGER #251202,   )
                         )
            Plaintiff,   )   Case No. 2:06-cv-141
                         )
v.                       )   HON. GORDON J. QUIST
                         )
PATRICIA L. CARUSO, et al., )
                         )   **OPINION**
            Defendants.  )
_____)

    This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), the court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. The court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 595 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S. Ct. 1728, 1733 (1992). Applying these standards, the court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

  I.  Factual Allegations

    Plaintiff John Umbarger, an inmate at the Ojibway Correctional Facility (OCF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants MDOC Director

Patricia L. Caruso, MDOC Manager of Office of Policy and Hearings Richard Stapleton, Hearing Officer Unknown O'Brien, Warden Jeffrey White, Assistant Deputy Warden Jim Usitalo, Hearing Investigator Unknown McRae, Assistant Resident Unit Supervisor / Hearing Officer Unknown Zorich, Mailroom / Records Office Supervisor Shar Buck, Mailroom Clerk Unknown MacLeod, Lieutenant A. Basso, Resident Unit Manager Unknown Deloria, and Unknown Party within the Attorney General's Office.

Plaintiff alleges that on September 27, 2005, Defendants rejected books containing Uniform Commercial Code (UCC) materials that had been ordered by Plaintiff. On March 4, 2006, Plaintiff's property and legal work were seized for the sole purpose of identifying, seizing and destroying UCC material. On March 17, 2006, Plaintiff's legal mail was seized because it contained UCC material. Plaintiff states that on March 9, 2006 and March 14, 2006, he received major misconduct tickets for "insolence" and "attempted felony" related to his possession of UCC materials. Plaintiff was convicted of the major misconduct violations. Plaintiff contends that Defendants' conduct violated his rights under the First, Fourth, Fifth and Fourteenth Amendments. Plaintiff seeks both damages and injunctive relief.

II.  Lack of exhaustion of available administrative remedies

Plaintiff has failed to sufficiently allege and show exhaustion of available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 122 S. Ct. 983 (2002); *Booth v. Churner*, 532 U.S. 731, 121 S. Ct. 1819 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 122 S. Ct. at 984; *Booth*, 532 U.S. at 741,121 S. Ct. at 1824. A district court must enforce the exhaustion requirement sua

sponte. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.), *cert. denied*, 525 U.S. 833, 119 S. Ct. 88 (1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available. *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the court may determine what claims, if any, have been exhausted. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir.), *cert. denied*, 531 U.S. 1040, 121 S. Ct. 634 (2000). A prisoner must specifically mention the involved parties in the grievance to make prison officials aware of the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001).

Plaintiff's claims are the type of claims that may be grieved. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy and procedure or unsatisfactory conditions of confinement") (effective Nov. 1, 2000). The burden to allege and show exhaustion belongs to Plaintiff. *See* 42 U.S.C. § 1997e(a); *Knuckles El*, 215 F.3d at 642; *Brown*, 139 F.3d at 1104. This requirement is "so that the district court may intelligently decide if the issues raised can be decided on the merits." *Knuckles El*, 215 F.3d at 642. Plaintiff attaches copies of grievances he filed on Defendants Caruso, Stapleton, O'Brien, White, McRae, Zorich, Buck, MacLeod, and Basso to his complaint, as well as copies of appeals. However, it does not appear that Plaintiff had completed his appeals on the grievances he filed against Defendants Caruso and White. The Sixth Circuit has squarely held that a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). The administrative process must be complete before the prisoner files an action in federal court. *Id.* In

addition, it does not appear that Plaintiff filed a grievance with regard to his claims against Defendants Usitalo, Deloria, or Unknown Party.  An allegation that remedies have been exhausted is not enough, as a plaintiff must provide the decisions reflecting the administrative disposition of his claims or other evidence showing that he has exhausted his remedies.  *Williams v. McGinnis*, No. 98-1042, 1999 WL 183345, at *1 (6th Cir. March 16, 1999). The Sixth Circuit has found that the district court is not required to hold evidentiary hearings on the issue of exhaustion or "spend a lot of time with each case just trying to find out whether it has jurisdiction to reach the merits."  *See Knuckles El*, 215 F.3d at 642.

It is not clear whether Plaintiff may still grieve his claims.  Under the policy of the prison, complaints must be resolved expeditiously, and complaints may be rejected as untimely.  *See* Policy Directive 03.02.130, ¶¶ G-3, T, V.  The Sixth Circuit held that an inmate cannot claim that "he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) (citing *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir.), *cert. denied*, 522 U.S. 906 (1997).  However, the United States Supreme Court has recently held that Prisoners must comply with applicable procedural rules, including deadlines, when exhausting administrative remedies as a precondition to bring an action in federal court.  *Woodford, et al. v. Ngo*, S. Ct. No. 05-416, Slip Op. p. 21 (Mar. 22, 2006).

Because the exhaustion requirement is no longer discretionary, but is mandatory, the Court does not have the discretion to provide a continuance in the absence of exhaustion.  *See Wright*, 111 F.3d at 417.  Rather, dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies.  *See Freeman*, 196 F.3d at 645; *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997);

*Bradford v. Moore*, No. 97-1909, 1998 WL 476206, at *1 (6th Cir. Aug. 3, 1998). Dismissal for failing to exhaust available administrative remedies does not relieve a plaintiff from payment of the civil action filing fee. *Omar v. Lesza*, No. 97 C 5817, 1997 WL 534361, at *1 (N.D. Ill. Aug. 26, 1997). Accordingly, the Court may dismiss Plaintiff's claims against Defendants Caruso, White, Usitalo, Deloria, and Unknown Party without prejudice.

However, the Court need not first require exhaustion of available administrative remedies when the claim may be dismissed because it is, "on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(2); *Brown v. Toombs*, 139 F.3d 1102, 1103 (6th Cir.), *cert. denied*, 525 U.S. 833 (1998). Because Plaintiff's complaint fails to state a claim, the court will dismiss the complaint with prejudice without first requiring Plaintiff to exhaust any available administrative remedies.

### III.  Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993), *cert. denied*, 510 U.S. 1177, 114 S. Ct. 1218 (1994). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2255 (1988); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994).

Initially, the court notes that Plaintiff's claims against Defendant Zorich are barred by the doctrine of judicial immunity. The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); MICH. COMP. LAWS §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Michigan Department of Corrections*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same). Plaintiff's action fails because Defendant Zorich is absolutely immune under the circumstances of this case.

Plaintiff claims that he was wrongly convicted of two major misconduct convictions. The Supreme Court has held that a claim for declaratory and injunctive relief, as well as for monetary damages, based upon allegations of deceit and bias on the part of the decisionmaker that necessarily implies the invalidity of the punishment imposed, is not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original).

The Supreme Court revisited this issue in *Wilkinson v. Dotson*, 125 S. Ct. 1242 (Mar. 7, 2005), a case in which the plaintiffs claimed that the retroactive application of parole guidelines violated the Constitution's *Ex Post Facto* and Due Process Clauses. The plaintiffs sought a new

- 6 -

parole eligibility review and a new parole hearing in accordance with the correct guidelines. *Wilkinson*, 125 S. Ct. at 1244.  In *Wilkinson*, the Court discussed the effect of its decisions in *Heck* and *Edwards*, as well as *Preiser v. Rodriguez*, 411 U.S. 475 (1973) and *Wolff v. McDonnell*, 418 U.S. 539 (1974) on the issue:

> Throughout the legal journey from *Preiser* to *Balisok*, the Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement--either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody.  Thus, *Preiser* found an implied exception to § 1983's coverage where the claim seeks--not where it simply "relates to"-- "core" habeas corpus relief, *i.e.,* where a state prisoner requests present or future release. Cf. *post,* at ----5 (KENNEDY, J., dissenting) (arguing that *Preiser* covers challenges that "relate ... to" the duration of confinement).  *Wolff* makes clear that § 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner.  *Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence.  And *Balisok*, like *Wolff*, demonstrates that habeas remedies do not displace § 1983 actions where success in the civil rights suit would not necessarily vitiate the legality of not previously invalidated) state confinement. These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)--no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)--*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson*, 125 S. Ct. at 1247-48.  The Court then concluded that because the plaintiffs' claims did not necessarily imply the invalidity of their convictions or sentences, they could present these claims in the context of a § 1983 action.  *Id.*  Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983.  *Wilkinson*, 125 S. Ct. at 1247-48; *Edwards*, 520 U.S. at 646.

In *Muhammad v. Close*, 124 S. Ct. 1303 (2004), the Supreme Court clarified that *Edwards* requires the favorable termination of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration of the prisoner's sentence is affected. *See Johnson v. Coolman*, No. 03-1909, 2004 WL 1367271, at *1 (6th Cir. June 15, 2004). In other words, *Edwards* still applies where a plaintiff has lost good time as the result of the misconduct conviction. Under Michigan law, a prisoner loses good time credits for the month of his major misconduct disciplinary conviction. *See* MICH. COMP. LAWS § 800.33. In addition, the warden may order forfeiture of previously accumulated credits. *Id.* Plaintiff does not assert that he did not forfeit good time credit for the month of his conviction. Accordingly, to the extent that Plaintiff is claiming he was wrongly convicted of major misconducts, his claims remain noncognizable under § 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary conviction. *See Shavers v. Stapleton*, No. 03-2210, 2004 WL 1303359, at *1 (6th Cir. June 9, 2004).

Plaintiff claims that Defendants improperly seized his legal mail and other property because it contained UCC material in violation of his First Amendment rights. Although there is no question that the First Amendment applies to a prisoner's receipt of incoming mail, the right is subject to limitation by legitimate penological interests. *Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). The Supreme Court has held that prison regulations (similar to those in Michigan) allowing a warden to reject any publication for good reason pursuant to specific criteria did not violate the First Amendment because the regulations were reasonably related to legitimate penological interests. *Thornburgh v. Abbot*, 490 U.S. 401, 413 (1989). In *Thornburgh*, the regulations contained a non-exhaustive list of criteria to support the rejection of a publication. *Id.* at 405 n. 6.

The Supreme Court applied four factors relevant to the inquiry whether a restriction is reasonably related to legitimate penological interests: (1) whether there is a valid rational connection between the regulation and the legitimate governmental interest which it allegedly furthers, (2) whether there are alternative means by which the inmate may exercise the right impinged, (3) what impact the accommodation of the inmate's constitutional right will have on guards, other inmates, or the allocation of prison resources generally, and (4) the existence or absence of ready alternatives to the regulation in question. *Turner v. Safley*, 482 U.S. 78, 88-91 (1987) (cited in *Thornburgh*, 490 U.S. at 414-18).

Under prison policy, prisoners are prohibited from receiving mail that is a threat to the security, good order or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner. Policy Directive 05.03.118, ¶ HH. According to a memorandum from Defendant Caruso, dated January 1, 2005, there had been increased activity by prisoners engaging in various schemes involving the UCC during the previous year, and that such activity had included "copyrighting names and making demands for money whenever the name [was] used by another, preparing fraudulent drafts or bills of exchange, and filing fraudulent liens in order to harass staff, prosecutors, judges and others." *See* Director's Office Memorandum 2005-4, attached as an exhibit to Plaintiff's complaint. The memorandum states that, as a result of this conduct, prisoners are no longer authorized to have any books, pamphlets, forms, or other material regarding actions that can be taken under the UCC. However, materials that merely set forth the statute or provide a scholarly analysis are not included in the ban. *Id.* Given this background, preventing UCC materials from entering the prison environment was patently within the reasonably legitimate penological objectives of the prison officials. Therefore, preventing Plaintiff from possessing or receiving UCC material did not constitute a violation of his First Amendment rights.

Plaintiff also claims that his Fourth Amendment right to be free from unreasonable searches and seizures was violated. However, it has long been accepted that prison officials may inspect an inmate's ordinary mail. *See for example Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974). Legitimate penological interests justifying this practice are obvious. "The possibility that contraband will be enclosed in letters, even those from apparent attorneys, surely warrants prison officials' opening the letters." *Id.* at 577. In addition, in *Hudson v. Palmer*, 468 U.S. 517, 525-526, 104 S. Ct. 3194, 3199 (1984), the Supreme Court held that prisoners have no reasonable expectation of privacy in their cells, and upheld unannounced cell searches. The court notes that the same analysis would fully apply to searches of a prisoner's personal property such as nonlegal mail.

Further, in *Hudson*, the United States Supreme Court noted that the same reasons which led it to conclude that the Fourth Amendment did not prohibit searches of a prisoner's cell, applied with equal force to seizures. *Id.* at 528 n 8. The Court stated that "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.* The Supreme further stated that although the Fourth Amendment does not protect against seizures in a prison cell, an inmate's property cannot be destroyed with impunity, noting that the respondent in *Hudson* had adequate state remedies even apart from inmate grievance procedures. *Id.* This analysis applies equally to a prisoner's mail. Plaintiff in this case has not demonstrated the absence of adequate state remedies for defendants' alleged misconduct. Therefore, Plaintiff's claim that his Fourth Amendment right to be free from unreasonable searches and seizures was violated is properly dismissed.

Plaintiff also asserts that his "legal mail" was handled improperly. However, according to the step I grievance response to Grievance Number OCF -05-10-00886-15b, which is attached to Plaintiff's complaint, only mail from an attorney or law firm, a legitimate legal service

organization, a non-prisoner paralegal working on behalf of an attorney, law firm, or legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court or a clerk of the court may be considered as legal mail, and then only if it is clearly marked as such. Plaintiff concedes that his "Attorney" is a "Argylee Unbarger" and is not a member of the Bar Association. Therefore, his mail is not "legal mail" and need not receive special handling.

Plaintiff also claims that the prohibition on prisoners possessing UCC materials violates his right to equal protection. Prisoners are not a suspect class. *See Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir.1998), *cert. denied*, 525 U.S. 1139 (1999); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). Thus, the prohibition will not offend the Equal Protection Clause if there is a rational basis for it under any reasonable state of facts. *See Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993). As noted above, the MDOC's legitimate security concerns provided a rational basis for the policy at issue in this case.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c).

The court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court dismisses the action, the court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the court will assess the appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is

barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the appellate filing fee in one lump sum.

This dismissal counts as a strike for purposes of 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated: July 19, 2006 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE